## Cincinnati, New Orleans & Texas Pacific Railway Co., and Sam Gossett v. Terrence McElroy, alias Tom McElroy.

(Decided February 2, 1912.)

### Appeal from Pulaski Circuit Court.

1. Railroads—Action Against for Damages for Injury to Employe—Evidence—Joinder of Conductor and Engineer.—In an action against a railroad company for personal injuries in which the conductor and engineer were joined as defendants, it was improper to submit to the jury evidence of the use of the outside angle

cock as a means of stopping the train, for the reason that to have used it at the time and place would have subjected the user of it on the train to grave danger of losing his life or suffering physical injury.

2. Same—Instruction—Insufficiency of Whistle—Conductor.—An instruction which permitted the jury to find against the conductor for the insufficiency of the whistle was objectionable, for if the whistle were not sufficient the company alone was responsible for it. The conductor had nothing to do with furnishing the whistle and is not answerable for its defects.

3. Same.—An instruction was also objectionable which permitted the jury to find that the conductor should have used the outside angle cock, which, as said before, evidence as to should not have been admitted.

4. Measure of Damages—Special Damages—Loss of Time—Pleading.—Temporary impairment of the power to earn money is only another expression for loss of time; and in order to recover special damages, such as loss of time, the plaintiff must aver it in his petition.

JOHN GALVIN, O. H. WADDLE & SONS for appellants.

R. B. WADDLE, ROBERT HARDING, EMMETT PURYEAR and MORROW & MORROW for appellee.

OPINION OF THE COURT BY JUDGE WINN—Reversing.

On December 16th, 1907, appellee, Tom McElroy, an employe of appellant Railway Company walking south from the station in the Somerset yards of the company, was struck in the back by a southbound shuttle train of the company. He brought this action against the company, Gossett, the train conductor, and Snyder, the engineer. A peremptory instruction was given in Snyder's favor, on the trial; and a verdict returned in plaintiff's favor against the company for $8,000 and against Gosset for $1,000. From the judgment on the verdict the company and Gossett appeal here.

In due course the company filed its petition, accompanied with proper bond, for a removal to the United States Circuit Court, charging the fraudulent joinder of the individual defendants, that plaintiff's petition charged no cause of action against the individual defendants, and that neither of them was guilty of any negligence. The removal was not allowed, and the company complains. Inasmuch as the evidence properly submitted to the jury warranted a submission of the case against Gossett, there was no error in refusing the removal. Enough of competent evidence was introduced

to take the case to the jury upon whether Gossett might have signalled the engineer and thus have put in motion the means to stop the train in a distance sufficiently short to have avoided striking McElroy. This was one of the means at his command, as gathered from the testimony of plaintiff's witnesses, to stop the train; for they say the signal could have been given and seen. In this connection it is proper to say that the use of the outside anglecock as a means of stopping the train, should not have been submitted to the jury; for it was a contrivance not used for the stoppage of trains; and because the evidence leaves no doubt in the mind whatsoever that to have used it at that time and place would have subjected the user of it on the train to grave danger of losing his life or suffering physical injury. Upon a retrial evidence upon this branch of the case will be excluded.    Likewise upon retrial, if the customary method of operating the shuttle train be shown as in this trial, the court will, if objection be made thereto, exclude the admission of Rule 102 of the Railway Company, which sets up a different method of operation.    :

The train was a shuttle train commonly used by the company in transferring its employes between the shops at Ferguson and the town of Somerset. It was made up of some five cars of box car form, with seats in pairs, back-to-back, across the cars, entrance to which was had through side openings from an outside step or platform running the length of the cars. On this day the train was being pushed backward, the engine being in the rear. In the front or southbound end of the southbound car were windows provided for lookout purposes. A lever worked from inside the car a whistle on the end of the car, sounded by air from the air-brake equipment. It seems that this whistle, when wide open, would stop the train through the air-brake mechanism, but not in so short a distance as would the customary application of the air-brake from the engine. Plaintiff below alleged the failure of the defendants to give any sufficien⸀ warning, to keep a lookout ahead, to give warning of the approach of the train, and to control its movements. He further alleged that the company was negligent in using a defective whistle on the car. Since the case must be retried it is not proper that any comment be made upon the weight of the testimony addressed to these issues, nor that any detailed statement be made reflect-

ing our conclusions as to the facts which appeared upon the trial, either for plaintiff or the defendants.

For the error in not excluding from the jury the testimony as to the angle-cock outside the train, and for error in the instructions, the case must be reversed. We have already pointed out the error as to the outside angle-cock; and now proceed to discuss the instructions given.

The first instruction is objectionable, because it permits the jury to embrace in its belief and to find damages against Gossett, the conductor, for the insufficiency of the whistle, to establish which testimony had been introduced. If the whistle were not sufficient the company alone was responsible for it. Gossett had nothing to do with the furnishing of the whistle and is, therefore, not answerable for its defects, if any. C., N. O. & T. P. Ry. Co. v. Robertson, 115 Ky., 858. This instruction is also objectionable in that it does not anywhere except from its direction to find for plaintiff the fact that the jury might find for defendants under the instruction upon contributory negligence, nor does it make any reference to the instruction upon contributory negligenre.

The second instruction, while endeavoring to separate in some measure the duties as between Gossett and the company, is inclined to be confusing in this respect, and to have permitted the jury to find against Gossett because of the alleged defect in the whistle. This instruction likewise makes no reference to any instruction upon contributory negligence.

The third instruction told the jury in substance that if the air whistle were defective and insufficient and that the company had "another whistle or bell" on the train, with either of which sufficient warning of its approach could have been given, and that Gosset failed to use such whistle or bell as would have been sufficient, the jury could find against both the company and Gosset. The outside angle-cock is spoken of in the record as a whistle. Indeed, in a question propounded by the court to one of plaintiff's witnesses, it is termed a whistle. This instruction, therefore, might well have been believed by the jury to include the outside angle-cock as one of the other means of warning named in the instruction. This instruction likewise makes no reference to the instruction upon contributory negligence or the relations and the duties of the parties.

The fifth instruction is objectionable in that it also

permits the jury to find that Gossett, in the use of ordinary care to avoid striking McElroy, should have used the angle-cock outside, which we have heretofore said should not have been permitted to go to the jury.

The sixth instruction, the one upon the measure of damages, permitted the jury to include in the damages found by it compensation for temporary destruction of McElroy's power to earn money. There was no allegation of any loss of time. In the case of C., N. O. & T. P. Ry. Co. v. Silvers, 126 S. W., 120, this court said that the temporary impairment of the power to earn money is only another expression for loss of time; that in order to recover special damages, such as loss of time, the plaintiff must aver it in his petition.

On the whole case we think the instructions were objectionable in failing to set out clearly to the jury the duty of McElroy as well as the duty of the company and of Gossett. Upon the return of the case to the trial court, upon retrial the court will give to the jury, if the evidence is substantially the same as upon the former trial (except, of course, the testimony which we have said should not be admitted) instructions as follows:

1. At the place where the injury occurred it was the duty of the defendant railway company and its servants in charge of its train to keep a reasonable lookout for the presence of persons on or about the track, and to give such warning of the approach of its train as was reasonably sufficient to apprise persons of ordinary care, in possession of their ordinary faculties, of the coming of the train, and their failure so to do, if any, was negligence on the part of said railway company.

2. It was the duty of the conductor, Gossett, to use ordinary care in the exercise of the means at his command to keep a lookout and give warning of the approach of the train, at the place set out in instruction No. 1; and in any event it was his duty to exercise ordinary care with the means at his command to avoid injury to the plaintiff, if he saw him and perceived, or by ordinary care should have discovered, his danger, if any, and said Gossett's failure to do so, if he did so fail, was negligence on his part and on the part of the railway company.

3. It was the duty of McElroy to use such care as may be reasonably expected of a person of ordinary prudence, to learn of the approach of the train and keep out of its way.

4. If the jury believe from the evidence that there was negligence on the part of the railway company, as set out in instruction No. 1, and by reason thereof McElroy was injured, they should find for the plaintiff as against the railway company, unless the plaintiff failed to exercise ordinary care for his own safety, as set out in instruction No. 6.

5. If the jury believe from the evidence that there was negligence on the part of the conductor, Gossett, as set out in instruction No. 2, and by reason thereof the plaintiff was injured, they should find for the plaintiff as against both said Gossett and the railway company, unless they believe that the plaintiff failed to exercise ordinary care for his own safety, as set out in instruction No. 6.

6. If the jury believé from the evidence that the plaintiff failed to exercise ordinary care to discover the approach of the train and to keep out of its way, and that such failure on his part, if any, so contributed to his injury that but for said failure his injury, if any, would not have been received, they will find for the defendant; unless you shall further believe from the evidence that those in charge of the train knew, or by ordinary care should have known of the peril in which his negligence, if any, had placed him, and thereafter failed to observe reasonable care to avoid his injury, if any.

7. Reasonable or ordinary care is such care as an ordinarily prudent person will usually exercise under circumstances like or similar to those proven in this case.

8. If you find for the plaintiff you will award him such damages as you may believe from the evidence will fairly compensate him for his mental and physical suffering or either, if any, and for the permanent impairment, if any, of his power to earn money, which you may believe from the evidence was the proximate result of his injury, if any, not exceeding in all, however, the sum of $20,000, the amount claimed in the petition.

9. If you find for the plaintiff at all you may assess any damages so found for him either severally or jointly against the defendants, railway company and Gossett. If you shall assess the damages against the said defendants severally you will say in your verdict what amount or portion of such damages each defendant shall pay; and if you assess the damages against the said defendants jointly, then you will return a verdict against both

defendants jointly for the amount, if any, so assessed.

10. Nine or any greater number of jurors concurring may make a verdict, but if any number less than twelve concur in finding a verdict the number so concurring must sign the verdict. If, however, all the jurors agree only one of them will sign the verdict.

It is only necessary to add that the insufficiency of or defect in the whistle, if any, is covered by that portion of the first instruction which sets up the affirmative duty of the railway company to give such warning of the approach of its train as was reasonably sufficient to apprise persons of its approach. We do not consider it good practice to single out an item of this nature in the instructions.

The question of whether the place was one where the presence of persons upon the track might be anticipated is not in this case; for defendants prove the construction and maintenance of cinder paths at this point for walking purposes.

For the reasons given the judgment of the trial court is reversed for a new trial consistent herewith.